STATE OF CONNECTICUT *v.* PETER GURA
(AC 16369)

Foti, Schaller and Daly, Js.

634

Argued June 6—officially released September 9, 1997

*Peter C. Harvey,* for the appellant (defendant).

*Eileen McCarthy Geel,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Joseph A. Corradino,* assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant appeals from the trial court's judgment of conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a),[1] rendered after a

---

[1] General Statutes § 14-227a provides in pertinent part: "Operation while under the influence of liquor or drug or while impaired by liquor. (a) Operation while under the influence. No person shall operate a motor vehicle

conditional plea of nolo contendere pursuant to General Statutes § 54-94a.[2]

The following facts are not disputed. On November 4, 1994, at approximately 10:47 p.m., the defendant was driving his motor vehicle south on Park Avenue, a public highway that divides the town of Fairfield and the city of Bridgeport. The east side of Park Avenue is in Bridgeport. At that time, Officer Donald Smith of the Fairfield police was parked on the southbound side of Park Avenue in the vicinity of the Fairfield Wheeler Golf Course. He heard the thumping of a flat tire and then observed the defendant's vehicle proceeding south on Park Avenue in Fairfield. Smith pulled his cruiser into the southbound lane behind the defendant. Smith noted that the left rear tire of the defendant's vehicle was flat and, while flashing his cruiser lights, clocked the defendant traveling thirty-five miles per hour for three-tenths of a mile. The defendant made a left turn, crossing the center line of Park Avenue into Bridgeport, and proceeded to a condominium parking lot where he stopped.

Both Smith and the defendant exited their vehicles. Smith observed that the defendant was unsteady on his

while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight. . . ."

[2] General Statutes § 54-94a provides in pertinent part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. . . ."

feet and used the car for support while standing. Smith noted the strong odor of alcohol emanating from the defendant, whose speech was slurred. The defendant admitted to having had "a couple" of drinks at home. Smith then administered the horizontal gaze nystagmus, the walk and turn and the one leg stand field sobriety tests. He also observed an open container of malt liquor in the defendant's car. Smith took the defendant to the Fairfield police headquarters where the defendant's urine was tested, and he was charged with violating § 14-227a (a) for operation of a motor vehicle while under the influence of intoxicating liquor.

The defendant's sole claim on appeal is that the trial court improperly denied his motion to suppress certain evidence obtained during his arrest, i.e., Smith's observations and the physical evidence he seized.

"As a threshold matter, we must set forth the appropriate standards under which we review a trial court's denial of a suppression motion. . . . First, where the court's legal conclusions are challenged, we must decide if they are legally and logically correct, and if they are supported by the facts set forth in the memorandum of decision. . . . Second, if the factual basis of the court's decision is challenged, we must determine whether the facts in the memorandum are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *MacNeil*, 28 Conn. App. 508, 512–13, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992).

The defendant claims that his arrest was illegal because Smith violated General Statutes § 54-1f[3] by

[3] General Statutes § 54-1f (a) provides in pertinent part: "Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . ."

arresting the defendant outside the officer's jurisdiction. The defendant argues that General Statutes § 14-98a,[4] the statute pursuant to which Smith initially pursued the defendant, does not delineate an "offense" within the meaning of § 54-1f (a) and does not authorize a police officer to pursue a suspected offender outside of the officer's jurisdiction to make a stop at the first safe opportunity. Section § 54-1f (c)[5] authorizes police officers to continue beyond their jurisdictions the immediate pursuit of any offender who may be arrested under the provisions of that section. The defendant claims that the officer had probable cause to believe that he had committed only an infraction and, therefore, could not make an extraterritorial arrest.

Connecticut's statutory scheme reflects an unambiguous policy aimed at ensuring that our highways are free of the carnage associated with drunk drivers. "It is an accepted rule of statutory construction that the promulgators of statutes or rules do not intend to proclaim . . . ineffective rules or legislation. It is also a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre

[4] General Statutes § 14-98a provides in pertinent part: "Tires to be in safe operating condition. No person shall operate a motor vehicle or trailer upon the public highways unless such motor vehicle or trailer is equipped with tires in safe operating condition in accordance with requirements approved by the Commissioner of Motor Vehicles. . . . Any law enforcement officer, at any time, upon reasonable cause to believe that the tires of a vehicle are unsafe . . . may require the operator of such vehicle to stop and submit the tires of such vehicle to an inspection. If the inspection discloses the vehicle to be in violation, the officer may issue a summons for such violation. Operation of a motor vehicle . . . in violation of any provision of this section shall be an infraction."

[5] General Statutes § 54-1f (c) provides in pertinent part: "Members of any local police department . . . when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed."

results. . . . The context of § 54-1f requires [the conclusion] that the term 'offense' as used therein includes motor vehicle violations. Otherwise, the policy stated above could be frustrated by the fortuitous crossing of a town line." (Citation omitted; internal quotation marks omitted.) *State* v. *Harrison*, 228 Conn. 758, 765, 638 A.2d 601 (1994).

In *Lawlor* v. *Goldberg*, 34 Conn. App. 189, 190–91, 640 A.2d 1016, cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994), "[t]he trial court found that the [Wethersfield] officer had unlawfully stopped the plaintiff in Glastonbury for violations of [General Statutes] §§ 14-218a and 14-236 and, thus, had unlawfully arrested the plaintiff for operating a vehicle while under the influence of liquor in violation of § 14-227a (a). As a result, the trial court found the commissioner's decision clearly erroneous." We reversed the trial court's decision, holding that "[t]his case is controlled by our Supreme Court's recent decision in *State* v. *Harrison*, [supra, 228 Conn. 758]. In *Harrison*, our Supreme Court interpreted the term 'offense' as used in § 54-1f to include motor vehicle violations. Id., 765. Therefore, in accordance with *Harrison*, we conclude that the Wethersfield officer had lawfully pursued the plaintiff across town lines, had lawfully stopped the vehicle and had lawfully arrested the plaintiff. Thus, the trial court improperly determined that the commissioner's decision was clearly erroneous." *Lawlor* v. *Goldberg*, supra 191.

In *Duncan* v. *Goldberg*, 34 Conn. App. 201, 640 A.2d 1014, cert. denied, 229 Conn. 923, 642 A.2d 1213 (1994), a similar situation arose with an initial suspicion of operating at an excessive rate of speed in violation of General Statutes § 14-219 (c) and a resultant arrest for violating § 14-227a (a). "At the time that the [Farmington] police officer first observed the plaintiff, he noted that the plaintiff was operating his motor vehicle at what appeared to be an excessive rate of speed. Thus,

at the time that the officer pursued the plaintiff into Avon, he suspected only that the defendant had committed a motor vehicle violation under . . . § 14-219 (c). When the officer stopped the plaintiff's vehicle in Avon, the investigation that he conducted led him to believe that the plaintiff had been operating his vehicle while under the influence of liquor. The officer thereupon arrested the plaintiff and charged him with a violation of . . . § 14-227a (a). The trial court found that the officer had unlawfully stopped the plaintiff in Avon for a violation of § 14-219 (c) and, thus, had unlawfully arrested the plaintiff for operating a vehicle while under the influence of liquor in violation of § 14-227a (a). As a result, the trial court found the commissioner's decision clearly erroneous 'in view of the reliable, probative and substantial evidence on the whole record.' " Id., 202–204.

Once again, we turned to the decision in *Harrison* and concluded "that the Farmington officer had lawfully pursued the plaintiff across town lines, had lawfully stopped the vehicle and had lawfully arrested the plaintiff. Thus, the trial court improperly determined that the commissioner's decision was clearly erroneous." Id., 204.

As these cases suggest, the fact that the conduct observed by the arresting officers within their jurisdictions constituted only infractions is irrelevant to the validity of the subsequent arrests outside of their jurisdictions. See *State* v. *Kowal*, 31 Conn. App. 669, 672, 626 A.2d 822, cert. denied, 227 Conn. 923, 632 A.2d 702 (1993). The trial court, therefore, properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.